IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JONATHAN M. GAGLIARDINO** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-1358** |
| | : | |
| **PINKERTON CONSULTING AND** | : | |
| **INVESTIGATIONS** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                             **February 12, 2024**

      An employee claiming his former employer fired him to retaliate for engaging in protected conduct must plead his specific protected conduct, when he engaged in the conduct, and when his former employer fired him. The employee claiming his employer breached an employment agreement or alternative contract theories must also plead why the former employer's decisions violated the implied terms of an employment agreement and how he can proceed on an unjust enrichment theory if there is an employment agreement. We today dismiss an employee's claims for failing to plead facts supporting his Fair Labor Standards Act and contract theories. We grant him leave to timely amend should he be able to plead facts consistent with Rule 11.

**I.    Alleged facts**

      Pinkerton Consulting and Investigations provides personal security for business executives. Pinkerton hired Johnathan Gagliardino in 2016 as its only Delaware-based agent.[1] Mr. Gagliardino and Pinkerton entered a "valid employment agreement."[2] Mr. Gagliardino's work schedule varied greatly.[3] Mr. Gagliardino routinely worked eighty-four-hour weeks or not at all.[4] Mr. Gagliardino worked every security detail for Pinkerton in Delaware.[5] Pinkerton hired Delaware subcontractors if the assignment required more than one agent or if Mr. Gagliardino could not work the assignment.[6]

Mr. Gagliardino sought Pinkerton's support to obtain a license to work protection details in Maryland.[7] Pinkerton's Richard Dunmire told Mr. Gagliardino he must agree to work less than forty-eight-hours per week to receive both Pinkerton's financial support and for an authorized Pinkerton employee to sign the documents Mr. Gagliardino needed to obtain a license in Maryland.[8] Pinkerton's Dunmire induced Mr. Gagliardino to accept the limited work schedule because Mr. Gagliardino relied on Pinkerton to obtain his Maryland license.[9]

Pinkerton's Dunmire told Mr. Gagliardino on August 6, 2021 Mr. Gagliardino needed to obtain either Supervisor Marshall Ramsey's or a Pinkerton Human Resources employee's approval to work overtime.[10] Pinkerton's Dunmire reduced overtime pay owed to Mr. Gagliardino.[11] Pinkerton's Dunmire corrected Mr. Gagliardino's pay only after Mr. Gagliardino complained about his pay reduction.[12]

Mr. Gagliardino obtained Supervisor Ramsey's approval to work additional overtime provided Mr. Gagliardino's time worked did not exceed thirty-two-hours per week.[13] Mr. Gagliardino informed Pinkerton's Dunmire of this approval by August 20, 2021.[14]

Pinkerton's Dunmire claimed Mr. Gagliardino slept on a subcontractor client's jobsite in an October 14, 2021 email.[15] The subcontractor company conducted an internal investigation and concluded the subcontractor's employee, not Mr. Gagliardino, slept during the shift.[16] Pinkerton's Dunmire removed Mr. Gagliardino from the client's jobsite on October 14, 2021 despite the subcontractor's investigation.[17] Pinkerton's Dunmire based his decision removing Mr. Gagliardino from the jobsite and forbidding Mr. Gagliardino's return based on the false accusation Mr. Gagliardino slept at the jobsite.[18]

Pinkerton management refused to respond to Mr. Gagliardino about his "unfair and illegal treatment."[19] Pinkerton fired Mr. Gagliardino when Mr. Gagliardino informed Pinkerton

2

management and Pinkerton Human Resources about its "unfair and illegal treatment" towards him.[20] Pinkerton manipulated "a record to create fictional grounds" to reduce Mr. Gagliardino's work hours and then fired Mr. Gagliardino.[21]

## II. Analysis

Mr. Gagliardino now sues his former employer Pinkerton for violating the Fair Labor Standards Act by retaliating against him for complaining about his treatment, breaching an implied covenant of good faith and fair dealing, and unjust enrichment.[22] Mr. Gagliardino alleges Pinkerton violated the Fair Labor Standards Act by firing him after he complained about the unfair and illegal manipulation of his wages and work time.[23] Mr. Gagliardino alleges Pinkerton violated the implied covenant of good faith and fair dealing contained in a valid employment agreement by relying on the false accusations Mr. Gagliardino slept on the job to cut Mr. Gagliardino's hours and fire him.[24] Mr. Gagliardino alleges Pinkerton's reliance on the false sleeping accusations constitute a "manipulation of a record to create fictional grounds" for reducing Mr. Gagliardino's hours and firing him.[25] Mr. Gagliardino alleges Pinkerton unjustly enriched itself by firing Mr. Gagliardino.[26]

Pinkerton moves to dismiss Mr. Gagliardino's claims.[27] Pinkerton argues Mr. Gagliardino does not plead a Fair Labor Standards Act retaliation claim because he did not engage in protected activity and fails to allege a causal connection between his alleged protected activity and termination.[28] Pinkerton argues Mr. Gagliardino does not plead a breach of the implied covenant of good faith and fair dealing claim because Mr. Gagliardino does not identify a specific implied contractual obligation Pinkerton violated by firing him.[29] Pinkerton argues Mr. Gagliardino does not plead an unjust enrichment claim because he does not allege the pecuniary gain Pinkerton received by firing Mr. Gagliardino.[30] We need not address Pinkerton's assertion the Fair Labor Standards Act preempts Mr. Gagliardino's contract claims.[31]

3

We find Mr. Gagliardino does not plead a Fair Labor Standards Act retaliation claim because he does not allege the substance and timing of his complaints to Pinkerton management. We find Mr. Gagliardino does not plead a breach of the implied covenant of good faith and fair dealing claim because he pleads several different potential causes for his firing. We find Mr. Gagliardino does not plead an unjust enrichment claim because he has a valid remedy at law to challenge Pinkerton's conduct under his employment agreement. We dismiss each claim without prejudice allowing Mr. Gagliardino the opportunity to marshal his facts and replead if he can do so mindful of Rule 11.

### A. Mr. Gagliardino does not plead a retaliation claim.

Mr. Gagliardino alleges Pinkerton's Dunmire reduced Mr. Gagliardino's worked overtime on August 6, 2021 but later corrected it.[32] Mr. Gagliardino alleges Pinkerton's Dunmire removed Mr. Gagliardino from a jobsite on October 14, 2021 based on false accusations Mr. Gagliardino slept at the jobsite.[33] Mr. Gagliardino alleges he informed Pinkerton management and its Human Resources department at an unspecified date about the company's "unfair and illegal treatment" of Mr. Gagliardino.[34] Mr. Gagliardino alleges Pinkerton fired him after this meeting at an unspecified later date.[35] Pinkerton counters Mr. Gagliardino does not plead he engaged in protected activity because he does not specify to what "unfair and illegal treatment" Pinkerton subjected him.[36] Pinkerton counters Mr. Gagliardino does not plead a causal connection between his alleged protected activity and firing because he does not specify when and to whom he complained nor his termination date.[37] We find Mr. Gagliardino does not plead a retaliation claim under the Fair Labor Standards Act because he does not allege he engaged in protected activity, and even if he did, Mr. Gagliardino does not allege a causal connection between his protected activity and an adverse employment action.

4

An employee alleging a retaliation claim under the Fair Labor Standards Act must allege he engaged in a protected activity, the employer took an adverse employment action against the employee, and there exists a causal link between the employee's protected activity and the employer's adverse employment action.[38]

### i. Mr. Gagliardino does not plead he engaged in protected activity.

Mr. Gagliardino alleges he met with Pinkerton at an unspecified date to discuss the company's "unfair and illegal treatment" towards him.[39] Mr. Gagliardino alleges this meeting occurred after Pinkerton's Dunmire reduced Mr. Gagliardino's worked overtime, but later corrected it, and after Pinkerton's Dunmire relied on false accusations Mr. Gagliardino slept on a jobsite to remove Mr. Gagliardino from the jobsite.[40] Mr. Gagliardino clarifies his allegation of "unfair and illegal treatment" constituted "unfair and illegal manipulation of his wages and work time."[41] Pinkerton counters Mr. Gagliardino does not allege the subject matter of his complaint to Pinkerton, when it occurred, and to whom at Pinkerton Mr. Gagliardino complained.[42] We find Mr. Gagliardino does not plead he engaged in protected activity because he does not allege the specifics of his alleged protected activity through a complaint to Pinkerton.

The Fair Labor Standards Act prohibits employers from discriminating "against any employee because such employee has filed a[] complaint."[43] Our colleagues consider informal or internal complaints by employees as protected activity under the Fair Labor Standards Act though our Court of Appeals has not expressly addressed this issue.[44] The Supreme Court instructs the employee's complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."[45]

We are guided by the contrasts offered by Judge Brody in denying an employer's motion to dismiss an employee's Fair Labor Standards Act retaliation claim where the employee complained to the scaffolding company's treasurer about not being paid her wages and overtime.[46] The employee in *Sondesky v. Cherry Scaffolding, Inc.* worked as the company bookkeeper.[47] The employee had a phone conversation with the company's treasurer requesting the company pay her in full for the hours she worked at the company.[48] The employee submitted a log of her hours including overtime hours she worked to the company's payroll department.[49] The company's management team approved her compensation but fired her before the employee received her overtime pay.[50] Judge Brody found the employee pleaded protected activity because she "clear[ly] assert[ed]" her right to overtime compensation under the Fair Labor Standards Act to the company.[51]

We are also guided by Judge Vazquez granting dismissal of two employees' Fair Labor Standards Act retaliation claim where the employees asked a vice president at the management company to clarify a company policy about rent compensation.[52] The employees in *Rovetto v. Dublirer* worked for the management company as maintenance staff.[53] The management company offered to rent to the employees a one-bedroom apartment the company owned.[54] The employees asked the management company's vice president "for clarification of administrative rent compensation" after receiving deductions in their paycheck for rent.[55] The vice president explained the employees "don't get that money" and the apartment "is part of [their] jobs."[56] The employees moved out of the apartment and into their own home after living in the management company-owned apartment for seven years but the management company docked their next paycheck in the amount of the apartment's rent.[57] The management company fired one of the employees and the employees sued and alleged a Fair Labor Standards Act retaliation claim.[58] Judge Vazquez

6

dismissed the retaliation claim holding asking a supervisor to "clarify a company policy" about compensation did not constitute protected activity under the Act.[59]

Mr. Gagliardino's allegations about the subject matter of his meeting with Pinkerton are less specific than those presented to Judges Brody and Vasquez in *Sondesky* and *Rovetto*. Mr. Gagliardino alleges he told Pinkerton management about "unfair and illegal treatment."[60] This meeting with Pinkerton occurred after: (1) Pinkerton allegedly denied him support to obtain a Maryland work license, (2) Pinkerton's Dunmire reduced, but later corrected, Mr. Gagliardino's worked overtime, and (3) Pinkerton's Dunmire removed Mr. Gagliardino for sleeping on a jobsite by relying on false accusations.[61] Describing the subject matter of a meeting which could have detailed several different interactions as Mr. Gagliardino's "unfair and illegal treatment" does not meet the Supreme Court's instruction the employee must be sufficiently clear about the Fair Labor Standards Act rights the employee asserts. Mr. Gagliardino alleging he complained of "unfair and illegal treatment" is less specific than the pleaded employee complaints in *Sondesky* and *Rovetto*.[62]

We cannot deduce about what Mr. Gagliardino complained. We find Mr. Gagliardino does not allege he engaged in protected activity.

### ii. Mr. Gagliardino does not plead a causal connection between his alleged protected activity and the termination.[63]

Mr. Gagliardino alleges Pinkerton fired him after he complained to Pinkerton management.[64] Pinkerton counters Mr. Gagliardino does not allege a causal connection between his alleged unclear complaint and his firing because he does not specify when he complained to Pinkerton.[65] We find Mr. Gagliardino does not allege a causal connection between his complaint to Pinkerton management and his firing because he does not allege when he met with Pinkerton management and does not allege when Pinkerton fired him.

7

An employee alleging a Fair Labor Standards Act retaliation claim must allege a causal connection between their protected activity and their firing.[66] Our colleagues consider the temporal proximity between the employee's protected activity and their firing as demonstrating a causal connection.[67]

Mr. Gagliardino does not allege the date he complained to Pinkerton management.[68] Mr. Gagliardino does not allege the date Pinkerton fired him.[69] We cannot determine temporal proximity without knowing these dates.

Mr. Gagliardino does not allege a Fair Labor Standards Act retaliation claim. We dismiss Mr. Gagliardino's Fair Labor Standards Act retaliation claim without prejudice allowing him to replead facts about his complaint to Pinkerton management and the circumstances of his firing.

### B. Mr. Gagliardino does not plead a breach of the implied covenant of good faith and fair dealing.

Mr. Gagliardino alleges he and Pinkerton had a valid employment agreement.[70] Mr. Gagliardino alleges Pinkerton relied on false accusations Mr. Gagliardino slept at a jobsite to terminate him.[71] Mr. Gagliardino alleges Pinkerton's reliance on false accusations constituted a manipulation of a record to create fictional grounds for firing Mr. Gagliardino.[72] Pinkerton counters Mr. Gagliardino does not plead a breach of the implied covenant of good faith and fair dealing because he does not allege a specific implied contractual obligation Pinkerton breached.[73] We find Mr. Gagliardino does not allege a breach of the implied covenant of good faith and fair dealing because he alleges Pinkerton fired him for both his complaint to Pinkerton management and the false accusations he slept at a jobsite preventing us from determining his firing's true cause.

The Delaware Supreme Court identified four fact scenarios in which an employee can bring a claim for the breach of the implied covenant of good faith and fair dealing.[74] The employer may be liable "(1) where termination violated public policy; (2) where the employer misrepresented an

8

important fact and the employee relied on the misrepresentation either to accept a new position or remain in the current one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employer's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination."[75]

We are guided by the contrasting facts reviewed by Chief Judge Robinson when denying a police department employer's motion to dismiss a terminated police officer's breach of the implied covenant of good faith and fair dealing claim where the police officer pleaded his supervisor fired him because of false accusations of lying.[76] The employee in *Gillispie* worked for the Dewey Beach Police Department before accepting a position with the Dover Police Department.[77] The officer's Dewey Beach supervisor accused the police officer of committing misconduct before leaving for the Dover Police Department.[78] The police officer's Dover Police Department supervisor questioned the police officer about the allegations and fired the police officer for lying during the questioning.[79] The police officer maintained he answered the Dover Police Department supervisor's questions truthfully.[80] The police officer sued his Dover Police Department supervisor alleging the supervisor breached the implied covenant of good faith and fair dealing by manipulating his employment record to state the police officer lied during questioning requiring his termination.[81] Chief Judge Robinson did not dismiss the police officer's breach of the implied covenant of good faith and fair dealing claim holding the Dover Police Department supervisor's false accusations the police officer lied during questioning and firing the police officer for allegedly lying during questioning constituted a false and fictitious ground to fire the police officer.[82]

We are also guided by Chief Judge Sleet dismissing a police officer's breach of the implied covenant of good faith and fair dealing claim where the officer claimed the police department fired him in retaliation for accusing the police chief of stealing.[83] The police officer in *Benson* told the mayor the police chief stole grant monies by falsifying overtime records.[84] The police officer got into a fight while off-duty and the police chief suspended him without pay.[85] The police chief later suggested to the police officer he should resign because the Town Council opposed his reinstatement to the police department.[86] The police officer sued arguing the police chief breached the implied covenant of good faith and fair dealing.[87] Chief Judge Sleet dismissed the breach of the implied covenant of good faith and fair dealing claim finding the police officer alleged the police chief fired him in retaliation for the police officer accusing the police chief of stealing, and did not allege the police chief falsified or manipulated the police officer's employment records.[88]

We cannot determine the reason Pinkerton fired Mr. Gagliardino based on his pleadings. Mr. Gagliardino alleges Pinkerton fired him for complaining about "unfair and illegal treatment."[89] Mr. Gagliardino later pleads Pinkerton fired him based on the false accusation of sleeping at a jobsite.[90] We cannot determine if Pinkerton fired Mr. Gagliardino in retaliation for his complaint like the contract claim Chief Judge Sleet dismissed in *Benson*. We cannot determine if Pinkerton fired Mr. Gagliardino by falsifying his employment record like the contract claim Chief Judge Robinson allowed to proceed in *Gillispie*.

Mr. Gagliardino must plead how Pinkerton breached the implied covenant; he must plead the reason for his firing. He cannot have it both ways. Mr. Gagliardino does not allege a breach of the implied covenant of good faith and fair dealing claim. We dismiss Mr. Gagliardino's breach of the implied covenant of good faith and fair dealing claim without prejudice allowing him to replead facts about the express reason for his firing.

### C. Mr. Gagliardino does not plead an unjust enrichment claim.

Mr. Gagliardino alleges Pinkerton's "actions unjustly enriched it."[91] Pinkerton counters Mr. Gagliardino does not allege an unjust enrichment claim because Mr. Gagliardino does not plead how Pinkerton received pecuniary gain from correcting Mr. Gagliardino's worked overtime after Pinkerton's Dunmire initially reduced Mr. Gagliardino's worked overtime. We find Mr. Gagliardino does not plead an unjust enrichment claim because he also admits a valid employment agreement.

We dismiss an employee's unjust enrichment claim where the employee alleges the existence of an employment contract.[92] Mr. Gagliardino pleads he and Pinkerton entered a "valid employment agreement."[93]

We find Mr. Gagliardino does not plead an unjust enrichment claim. We dismiss Mr. Gagliardino's unjust enrichment claim without prejudice allowing him to replead whether he and Pinkerton entered a contract or can somehow justify pleading this fact in the alternative.

### III. Conclusion

Mr. Gagliardino does not presently plead facts allowing us to plausibly infer a basis to proceed on a retaliation theory under the Fair Labor Standards Act absent identified protected conduct. He also does not plead facts allowing him to proceed on contract theories of breach of an implied covenant of good faith and fair dealing under an employment contract or unjust enrichment after pleading an employment contract. We grant him leave to timely amend if he can plead facts consistent with Rule 11 in support of his theories.

---

[1] ECF No. 1-1 ¶¶ 1, 4, 7.

[2] *Id.* ¶ 23.

---

[3] *See id.* ¶ 6. "As is common in the Executive Protection industry, Mr. Gagliardino might work for only one day or for [thirty] days straight." *Id.*

[4] *Id.*

[5] *Id.* ¶ 7.

[6] *Id.*

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 9.

[9] *Id.* ¶¶ 9–10.

[10] *Id.* ¶ 11.

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 12.

[14] *Id.*

[15] *Id.* ¶ 13.

[16] *Id.* ¶ 14.

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 15.

[20] *Id.*

[21] *Id.* ¶ 16.

[22] *Id.* ¶¶ 17–32.

[23] *Id.* ¶¶ 18–19.

[24] *Id.* ¶¶ 23–24.

---

[25] *Id.* ¶ 25.

[26] *Id.* ¶¶ 29–32.

[27] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also *Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP,* 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79, 69 V.I. 1034 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[28] ECF No. 6 at 8–11.

[29] *Id.* at 11–12.

[30] *Id.* at 12–13

[31] Judge Stark in *Montano* recognized "[t]he fact that Plaintiff's state-law claims 'run concurrently with her Fair Labor Standards Act claim' does not automatically mean those claims are preempted." *Montano v. Allen Harim Foods, LCC*, No. 15-392, 2017 WL 4162177, at *2 (D. Del.

Sept. 20, 2017); *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 262 (3d Cir. 2012) (stating "Congress explicitly contemplated dual enforcement of the FLSA," and stressing "traditional presumption against preemption" in context of "regulating employee's wages and hours.").

We cannot determine the fact basis for Mr. Gagliardino's Fair Labor Standards Act and contract claims nor whether the claims' factual predicates run concurrently. Pinkerton argues the facts supporting Mr. Gagliardino's claims are "intertwined." ECF No. 13 at 10. Mr. Gagliardino alleges a Fair Labor Standards Act retaliation claim. ECF No. 1-1, ¶¶ 17–21. Mr. Gagliardino pleads Pinkerton fired him after he complained about "unfair and illegal treatment." *Id.* ¶ 15. It is unclear to what "unfair and illegal treatment" Mr. Gagliardino complained as he alleges. We cannot determine whether the facts underlying Mr. Gagliardino's Fair Labor Standards Act claim are concurrent to those underlying Mr. Gagliardino's contract claims

[32] ECF No. 1-1 ¶ 11.

[33] *Id.* ¶ 14.

[34] *Id.* ¶ 15.

[35] *Id.*

[36] ECF No. 6 at 8–9.

[37] *Id.* at 10–11.

[38] *Haplea v. Plumsteadville Pub, LLC*, No. 23-01117, 2023 WL 6118573, *4 (E.D. Pa. Sept. 18, 2023); *Dajti v. Penn Cmty. Bank*, No. 20-1483, 2021 WL 1209835, *9 (E.D. Pa. Mar. 31, 2021).

[39] ECF No. 1-1 ¶¶ 11, 15. Mr. Gagliardino does not allege this meeting occurred after these two events. We infer this timing from the sequential paragraphs in the Complaint.

[40] *Id.* ¶ 11.

[41] *Id.* ¶ 18.

[42] ECF No. 6 at 9.

[43] 29 U.S.C. § 215(a)(3).

[44] *Robinson v. Pottstown Area Rapid Transit, Inc.*, 22-655, 2022 WL 4291333, at *6 (E.D. Pa. Sept. 16, 2022); *Szewczyk v. United Parcel Serv., Inc.*, No. 19-1109, 2019 WL 5423036, at *6 (E.D. Pa. Oct. 22, 2019).

[45] *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

[46] *Sondesky v. Cherry Scaffolding, Inc.*, No. 16-5667, 2017 WL 3873578 (E.D. Pa. Sept. 5, 2017).

[47] *Id.* at *1.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at *3.

[52] *Rovetto v. Dublirer*, No. 20-2497, 2020 WL 7022667 (D.N.J. Nov. 30, 2020).

[53] *Id.* at *1.

[54] *Id.*

[55] *Id.* at *2.

[56] *Id.*

[57] *Id.*

[58] *Id.* at *5–6.

[59] *Id.* at *6.

[60] ECF No. 1-1 ¶ 15.

[61] *Id.* ¶¶ 9, 11, 14.

[62] Counsel did not offer other judges reviewing a Fair Labor Standards Act retaliation claim applying a motion to dismiss standard and we could find few in our research. Counsel instead provided us cases reviewing Fair Labor Standards Act retaliation claim under a summary judgment standard.

[63] We consider whether Mr. Gagliardino alleges a causal connection despite finding he does not allege protected activity.

[64] ECF No. 1-1 ¶ 19.

[65] ECF No. 6 at 10.

[66] *Haplea v. Plumsteadville Pub, LLC*, No. 23-1117, 2023 WL 6118573, *4 (E.D. Pa. Sept. 18, 2023); *Dajti v. Penn Cmty. Bank*, No. 20-1483, 2021 WL 1209835, *9 (E.D. Pa. Mar. 31, 2021).

---

[67] *See, e.g.*, *Mims v. New Age Prot., Inc.*, No. 18-1185, 2018 WL 5829339, at *4 (E.D. Pa. Nov. 6, 2018).

[68] ECF No. 1-1 ¶ 15 ("When Plaintiff informed Pinkerton management and eventually Pinkerton HR after management refused to respond to any of Plaintiff's communications to them regarding his unfair and illegal treatment, he was terminated.").

[69] *Id.*

[70] *Id.* ¶ 23.

[71] *Id.* ¶ 24.

[72] *Id.* ¶ 25.

[73] ECF No. 6 at 11.

[74] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 442–44 (Del. 1996).

[75] *Gillespie v. Hocker*, No. 15-51, 2015 WL 4468922, at *6 (D. Del. July 22, 2015) (citing *Pressman*, 679 A.2d at 442–44).

[76] *Gillispie*, 2015 WL 4468922.

[77] *Id.* at *1.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at *2.

[82] *Id.* at *6.

[83] *Benson v. Cooke*, No. 15-858, 2016 WL 1562898 (D. Del. Apr. 15, 2016).

[84] *Id.* at *1.

[85] *Id.*

[86] *Id.*

[87] *Id.* at *4.

---

[88] *Id.*

[89] ECF No. 1-1 ¶ 15.

[90] *Id.* ¶ 24.

[91] ECF No. 1-1 ¶¶ 31.

[92] *Lyons Ins. Agency, Inc. v. Kirtley*, No. 18-09-40, 2019 WL 1244605, at *2 (Del. Super. Ct. Mar. 18, 2019).

[93] ECF No. 1-1 ¶ 23.